UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHANDONG LUXI
PHARMACEUTICALS CO., LTD.,

        Plaintiff/Counter-Defendant,

v.                                Case No. 8:21-cv-942-CEH-AEP

CAMPHOR TECHNOLOGIES, INC.,

        Defendant/Counter-Plaintiff.

_____/

## **REPORT AND RECOMMENDATION**

      This cause comes before the court upon Plaintiff Shandong Luxi Pharmaceutical Co., Ltd.'s ("Luxi") Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 5) and Defendant Camphor Technologies, Inc.'s ("Camphor") competing Motion for Preliminary Injunction ("Camphor's Motion") (Doc. 25).  The district judge denied Luxi's Motion for Temporary Restraining Order (Doc. 11) and referred Luxi's Motion for Preliminary Injunction ("Luxi's Motion") and Camphor's Motion to the undersigned for consideration of a report and recommendation (Docs. 12 & 48).[1]  The undersigned subsequently conducted a hearing on the competing motions on June 2, 2021.  For the reasons that follow,

---

[1] Luxi filed a Response in Opposition ("Luxi's Response") (Doc. 40) to Camphor's Motion, and Camphor filed a Response in Opposition ("Camphor's Response") (Doc. 42) to Luxi's Motion.

it is recommended that both Luxi's Motion (Doc. 5) and Camphor's Motion (Doc. 25) be denied.

## I.      Background

This litigation arises out of a business dispute between Luxi, a corporation organized under the laws of the People's Republic of China, and Camphor, a Sarasota based company (Doc. 37).   Luxi is an experienced manufacturer and developer of pharmaceutical compounds that are used in finished pharmaceutical products (Doc. 5 at ¶1; Doc. 37 at ¶3).   Camphor is in the business of process development and commercial production of consumer pharmaceutical products (Doc. 5 at ¶2; Doc. 37 at ¶4).   Luxi alleges that Camphor has retained a shipment of goods valued at approximately $482,000, without paying for the goods (Doc. 37 at ¶9; Doc. 5 at ¶¶21-26).

Luxi initiated this action by filing a seven-count complaint[2] against Camphor seeking monetary and injunctive relief (Docs. 1, 37).   In the Verified Amended Complaint ("Complaint"), Luxi asserts claims for injunctive relief (Count I), breach of contract – purchase order (Count II), breach of contract – exclusivity agreement (Count III), conversion (Count IV), tortious interference with a business relationship (Count V), unjust enrichment (Count VI), and replevin (Count VII) (Doc. 37 at ¶¶58-108).   Luxi then filed their Motion for Preliminary Injunction (Doc. 5), which seeks to enjoin Camphor and its agents, officers, employees, and

---

[2] For purposes of this Report and Recommendation, the undersigned will refer to the Amended Complaint (Doc. 37).

attorneys from (1) seizing Luxi's goods lawfully imported into the United States; (2) communicating with the Food and Drug Administration ("FDA") and Customs and Border Protect ("CBP") to attempt seizure of Luxi's goods in the future; (3) taking any action to interfere with the delivery of Luxi's goods to third parties; and (4) transferring, encumbering, converting, or otherwise disposing of Luxi's goods in Camphor's possession for which Camphor has not paid Luxi (Doc. 5 at Pgs. 12-13).

The parties' business relationship began in June 2014 when Camphor ordered a pharmaceutical product pursuant to an initial cooperation agreement (the "2014 Agreement") (Doc. 5 at ¶9; Doc. 37 at ¶5). [3] The 2014 Agreement prescribed an annual minimum purchase quantity and annual purchase price (Doc. 37 at ¶5). Camphor would order goods from Luxi vis a vis the periodic submission of purchase orders (Doc. 5 at ¶10). The 2014 Agreement was not to expire until 2019 but on July 5, 2016, the parties entered into a revised exclusive agency and supply agreement (the "2016 Exclusivity Agreement") (Doc. 37 at ¶5-6; Doc. 37-1). The 2016 Exclusivity Agreement provided that Luxi would exclusively make a certain Activated Pharmaceutical Ingredient, known as Polymyxin B Sulfate USP/EP ("the Product") for Camphor in exchange for Camphor's agreement to order a minimum quantity of the Product (Doc. 5 at ¶¶13-16; Doc. 5-1; Doc. 37 at ¶¶6-7); Doc. 37-1). The term of the 2016 Exclusivity Agreement expired at the end of 2019 and, despite the inclusion of a one-year renewal provision, the parties did not renew

---

[3] These statements and the statements that follow are taken from the parties' allegations and are not factual findings of this Court.

the agreement (Doc. 5 at ¶17; Doc. 37 at ¶8).  Luxi claims that in early 2019, the parties discussed a renewed exclusivity agreement but that Luxi did not timely receive a fully executed version of the document and thus, did not understand it to be effective (Doc. 37 at ¶8).  The parties continued to do business in 2020 and, according to Luxi, verbally agreed not to be bound by any exclusivity requirement (Doc. 37 at ¶8).  Camphor continued to order the Product from Luxi (Doc. 37 at ¶9).

The shipment at issue was placed in November 2020 and shipped on December 3, 2020 (Doc. 37 at ¶¶43,46).  Luxi shipped 153 kilograms of the Product at a price of $3,150.00 per kilogram, pursuant to the terms of the purchase order ("Purchase Order Contract") (Doc. 37 at ¶¶43-46; Doc. 37-2).  The terms of the Purchase Order Contract stated, "net 36 days of the date of the invoice," which Camphor modified to state "36 days from the date of [Airway Bill]" (Doc. 37 at ¶45; Doc. 37-2).  Camphor took possession of the shipment in January 2021 (Doc. 37 at ¶49).  To date, despite multiple demands, Luxi claims to have received no payment for the Product from Camphor (Doc. 37 at ¶¶50-52).  According to Camphor's counsel, Camphor is still in possession of the Product (Doc. 46).

On March 17, 2021, counsel for Camphor sent Luxi a letter ("March 2021 Demand Letter") wherein Camphor recognized receipt of the Product, explained that Camphor refuses to pay for the shipment and threatened to intercept future shipments made by Luxi to third parties (Doc. 37 at ¶50; Doc. 5-4).  The March 2021 Demand Letter also informed Luxi that Camphor's counsel had been in

contact with the FDA and CBP and directed those agencies to seize for Camphor's benefit any shipment from Luxi into the United States, even if intended for third parties (Doc. 37 at ¶¶54-55).   Luxi alleges that it will be irreparably harmed if Camphor and its agents are permitted to continue to communicate purportedly wrongful information to the FDA and/or CBP and if Camphor or its agents attempt to seize Luxi's future shipments to third-party customers (Doc. 37 at ¶¶56-57).   Luxi also claims irreparable harm if Camphor disposes of or transfers the Product in its possession that it has not paid for (Doc. 5 at ¶50).

In Luxi's Motion, Luxi argues that it is likely to succeed on the merits of its claims and that it will suffer irreparable harm absent emergency relief because of the devastating effect on its business reputation and loss of goodwill (Doc. 5 at ¶¶39-44).   Luxi contends that there will be no substantial harm to Camphor due to an injunction, since the relief requested would only result in Camphor being enjoined from wrongfully damaging Luxi's business operations and disposing of disputed property (Doc. 37 at ¶65).   Moreover, Luxi claims that the public has a strong interest in the promotion of fair international trade practices and further, that there is a strong public interest in preventing wrongful interference with business operations (Doc. 37 at ¶66).

Conversely, Camphor's Motion alleges wrongdoing by Luxi (Doc. 25). Camphor takes the position that there were three exclusive agency and supply agreements between Camphor and Luxi (Doc. 18 at ¶7; Doc. 25 at ¶10).   These three include the 2014 Agreement (which Camphor contends did not expire until

June 24, 2019), the 2016 Exclusivity Agreement, and the February 26, 2019 agreement ("2019 Exclusivity Agreement") with an initial term extending until February 25, 2024 (Doc. 18 at ¶7; Doc. 25 at ¶10).  The 2019 Exclusivity Agreement was executed by Luxi on March 5, 2019 and subsequently sent by Yongmin Li to Camphor on that same date (Doc. 18 at ¶15; Doc. 25 at ¶11).  Camphor also executed the 2019 Exclusivity Agreement on March 5, 2019 and the fully executed 2019 Exclusivity Agreement was delivered to the address provided therein for notice to Luxi on March 23, 2019 by UPS courier (Doc. 18 at ¶15; Doc. 25 at ¶11).  The delivery of the 2019 Exclusivity Agreement to Luxi was received and signed for by Yongmin Li (Doc. 18 at ¶15).

On March 21, 2019, a large explosion occurred in China at a plant near the only other major Chinese producer of the Product (Doc. 18 at ¶16; Doc. 25 at ¶13).  Subsequently, all chemical and pharmaceutical production of the Product was halted until government inspections could take place, thus leaving only Luxi and one other entity as producers of the Product (Doc. 18 at ¶¶16-17; Doc. 25 at ¶¶13-14).  Then, on March 27, 2019, Camphor began to place purchase orders for 200 kilograms of the Product as agreed during the negotiations of the 2019 Exclusivity Agreement (Doc. 18 at ¶17; Doc. 25 at ¶13).  Shortly thereafter, Luxi advised Camphor that it would not be honoring Luxi's commitment under the 2019 Exclusivity Agreement to provide the Product at the agreed upon pricing and refused to ship any product to Camphor, irrespective of the fact that Camphor had already submitted orders pursuant to the 2019 Exclusivity Agreements (Doc. 18 at

¶17; Doc. 25 at ¶13).  Camphor then had to purchase the Product at elevated prices and thus, suffered losses (Doc. 18 at ¶18; Doc. 25 at ¶14).

Months later after Luxi continued to refuse to deliver or accept the Camphor purchase order of March 27, 2019, Luxi finally agreed to sell Camphor the Product, but at an elevated price and not consistent with the 2019 Exclusivity Agreement (Doc. 18 at ¶19; Doc. 25 at ¶15).  On June 17, 2019, Camphor sent another purchase order which was acknowledged by Luxi, but which they did not fulfill (Doc. 18 at ¶20; Doc. 25 at ¶15).  Luxi refused to supply Camphor with the Product after execution of the 2019 Exclusivity Agreement until the single shipment that is the subject of Luxi's Complaint (Doc. 1) and Amended Complaint (Doc. 37) (Doc. 18 at ¶21).  On or about September 10, 2019, Camphor's counsel sent a demand letter to Luxi ("September 2019 Demand Letter") demanding a cure to the breach of the 2019 Exclusivity Agreement, which Luxi failed to cure (Doc. 18 at ¶22).  According to the September 2019 Demand Letter, Camphor was aware that, as of at least that date, Luxi was "selling and marketing the Product to other purchasers within China" (Doc. 43-1 at Pg. 1).  Another demand letter was sent on or about October 29, 2019 ("October 2019 Demand Letter") and again, Luxi, through Yongmin Li, confirmed receipt of that letter but failed to cure its breaches (Doc. 18 at ¶23).  Thus, Camphor contends that Luxi's assertions and allegations regarding Camphor's agreement to conduct business on a non-exclusive basis is false (Doc. 18 at ¶25).

Further, Camphor contends that Luxi has approached some of Camphor's largest clients in Europe and the United States in violation of its exclusivity

commitment (Doc. 18 at ¶28; Doc. 25 at ¶17).  Additionally, Luxi has purportedly appointed a competitor of Camphor as its authorized FDA agent for the importation of the Product (Doc. 18 at ¶28; Doc. 25 at ¶17).  Camphor claims it has lost one of its biggest clients due to Camphor's inability to fulfill its own supply obligations to that client (Doc. 18 at ¶29; Doc. 25 at ¶18).

Moreover, Camphor contends that the exclusive agency and supply agreements each contain a confidentiality provision and each individual page thereof is marked "Confidential Document" (Doc. 18 at ¶31; Doc. 25 at ¶19). Camphor contends that Luxi's filing of the 2016 Exclusivity Agreement is a breach of the confidentiality provision since such filing places into the public record confidential information that Luxi specifically agreed not to disclose (Doc. 18 at ¶31; Doc. 25 at ¶19).  Moreover, Camphor states that Luxi violated the confidentiality provision by approaching Camphor's customers in Europe and the United States (Doc. 18 at ¶31; Doc. 25 at ¶19).

On June 2, 2021, the undersigned held a hearing where the parties each set forth arguments in favor of their competing motions for preliminary injunction.  For the reasons that follow, it is recommended that both Luxi's Motion (Doc. 5) and Camphor's Motion (Doc. 25) be denied.

## II.    Standard of Review

The decision to grant or deny a preliminary injunction falls within the discretion of the district court.  *Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242, 1246 (11th Cir. 2002) (citation omitted); *Carillon Importers, Ltd.*

*v. Frank Pesce Int'l Grp. Ltd.*, 112 F.3d 1125, 1126 (11th Cir. 1997) (citation omitted). In determining whether a preliminary injunction should issue, the court considers whether the moving party demonstrated (1) a substantial likelihood of success on the merits; (2) irreparable harm to the moving party unless the injunction issues; (3) that the threatened harm to the moving party outweighs the potential harm the proposed injunction may cause the opposing party if the injunction issues; and (4) if issued, the injunction would not disserve or be adverse to the public interest. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (citations omitted). Since a preliminary injunction is an extraordinary and drastic remedy, a court should not issue a preliminary injunction unless the moving party clearly establishes the burden of persuasion as to each of the four prerequisites. *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.,* 320 F.3d 1205, 1210 (11th Cir. 2003).

## III.    Discussion

### A.    Luxi's Breach of Contract, Conversion and Unjust Enrichment Claims

As noted above, amongst other claims,[4] Luxi asserts claims for breach of contract (Count II), conversion (Count IV), and unjust enrichment (Count VI). To

---

[4]     In Count III, Luxi claims that Camphor breached the 2016 Exclusivity Agreement by: (1) failing to order the annual minimum purchase amount of the Product each year of the contract, resulting in lost profits and revenues to Luxi; and (2) by ordering the Product from other suppliers in violation of Section 1.4.1 of the 2016 Exclusivity Agreement (Doc. 37 at Pgs. 15-18). However, to the extent there was any breach of the 2016 Exclusivity Agreement, such harm has already occurred and bears no relation to the relief sought in Luxi's Motion. As Luxi cites in its Response in Opposition, "a prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past." *Regions Bank v. Raymond James & Assocs.*, 6:20-cv-658-Orl-40EJK, 2020 WL 6870815, *12 (M.D.Fla. May 15, 2020) (internal citations and quotations omitted) (Doc. 40 at

prevail on a breach of contract claim in Florida[5], a party must demonstrate (1) the existence of a valid contract; (2) a material breach of the contract; and (3) damages resulting from such breach. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *Friedman v. N.Y. Life Ins. Co.*, 985 So.2d 56, 58 (Fla. 4th DCA 2008). The essential elements under a theory of unjust enrichment are (1) a benefit conferred upon a defendant by the plaintiff; (2) the defendant's appreciation of the benefit; and (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for the defendant to retain it without paying the value thereof. *Ruck Bros. Brick, Inc. v. Kellogg & Kimsey, Inc.*, 668 So. 2d 205, 207 (Fla. 2d DCA 1995). Further, "conversion is an unauthorized act which deprives another of his property permanently or for an indefinite time." *Shelby Mut. Ins. Co. of Shelby, Ohio v. Crain Press, Inc.*, 481 So. 2d 501, 503 (Fla. 2d DCA 1985) (*citing Senfeld v. Bank of Nova Scotia Trust Company (Cayman) Limited*, 450 So. 2d 1157, 1160-61 (Fla. 3d DCA 1984)). "A conversion occurs when a person who has a right to possession of property demands its return and the demand is not or cannot be met." *Crain Press, Inc.*, 481 So. 2d at 503.

---

Pg. 12). Significantly, if proven, Luxi's alleged breaches of the exclusivity clause of the 2016 Exclusivity Agreement will result in damages that are calculable and finite.

　　　Additionally, the undersigned finds it unnecessary to discuss the merits of Luxi's replevin claim (Count VII), since replevin is a legal remedy that is inherently inconsistent with a preliminary injunction. *See Sensormatic Electronics Corp. v. Tag Company US, LLC*, 2008 WL 11333543, at *2 (S.D. Fla. Apr. 7, 2008) (stating that replevin is a remedy at law). Thus, the replevin claim bears no relation to the relief sought in Luxi's Motion.

[5] Here, Florida law governs, since the 2016 Exclusivity Agreement, the 2019 Exclusivity Agreement, and the Purchase Order Contract all provide that such contracts shall be governed by and construed in accordance with the laws of the State of Florida (Doc. 37-1 at ¶12; Doc. 25-1 at ¶12; Doc. 5-2 at ¶11).

Central to Luxi's breach of contract, conversion, and unjust enrichment claims is the allegation that Luxi delivered 153 kilograms of the Product to Camphor and that Camphor has refused to return the product and refused to pay for the product. (Doc. 5 at ¶41).  Luxi claims that it performed under the Purchase Order Contract by delivering 153 kilograms of the Product to the United States for delivery to Camphor, and that Camphor has admitted that the Product is in its possession (Doc. 37 at ¶70).  Luxi further claims that Camphor breached the Purchase Order Contract by failing to compensate Luxi for the goods as required under the terms of the Purchase Order Contract (Doc. 37 at ¶72).  Notably, Luxi contends that the 2019 Exclusivity Agreement is unenforceable, and that the parties' dispute is controlled by the Purchase Order Contract. (Doc. 5 at ¶¶41-43).  Camphor contends that the Purchase Order Contract is not the operative agreement, but that the 2019 Exclusivity Agreement is the valid agreement that governs the Purchase Order Contract (Doc. 25-2 at ¶12).  Camphor further asserts that it should be excused from its contractual obligations since Luxi breached the 2019 Exclusivity Agreement by selling the Product to other purchasers at premium prices due to a shortage of the Product, while simultaneously refusing to supply the Product to Camphor (Doc. 25 at ¶¶13-15).

Luxi's claim for injunctive relief is premised, in part, on its allegations that the 2016 Agreement was terminated, that it was not renewed with any exclusivity between Luxi and Camphor, and that the parties proceeded forward by individual purchase order contracts (Doc. 37 at Pgs. 11, 14).  Thus, Luxi contends that the

parties' relationship is governed not by the 2019 Exclusivity Agreement, but by the Purchase Order Contract (Doc. 37 at Pgs. 11, 14). Hence, a core issue related to the parties' dispute is what agreement governs the parties' dealings: the Purchase Order Contract, as Luxi contends, or the 2019 Exclusivity Agreement, as asserted by Camphor.

On this record, the Court finds that there is a substantial likelihood of success in Camphor establishing that the 2019 Exclusivity Agreement is valid and is the operative contract between the parties. Importantly, the 2019 Exclusivity Agreement is signed by both parties (Doc. 25-1 at Pg. 10). Luxi executed the agreement on March 5, 2019, and on that same date, Yongmin Li sent a copy of the agreement to Camphor (Doc. 18 at ¶15). Camphor also executed the agreement on March 5, 2019, and delivered the fully executed 2019 Exclusivity Agreement to Luxi's notice address by UPS courier on March 23, 2019 (Doc. 18 at ¶15; Doc. 18-1). This is supported by the Michael Creaturo Affidavit ("Creaturo Affidavit"), and corroborated by a UPS shipping receipt that is attached as an exhibit to the Creaturo Affidavit (Doc. 18-1). Further, Jessica Lee ("Lee"), a legal assistant to Camphor's counsel, sent an e-mail on November 11, 2019 to Yongmin Li with a copy of the 2019 Exclusivity Agreement between Luxi and Camphor (Doc. 18-3; Doc. 43-4).

Luxi contends that it did not timely receive a fully executed version of the 2019 Exclusivity Agreement (Doc. 37 at ¶8). Luxi further contends that in early 2020, the parties agreed to continue their business relationship without the rubric of the prior exclusivity agreements and further, that they verbally agreed that neither

party was bound by any exclusivity requirement (Doc. 37 at ¶8).  However, Luxi fails to provide any evidence to support these allegations.  Significantly, the record lacks any documentary evidence in which the parties express their mutual intent to abandon the 2019 Exclusivity Agreement after both parties had signed the Agreement.  The only evidence of record to cast doubt upon the 2019 Exclusivity Agreement enforceability is Luxi's self-serving statements.  Without more, the evidence of record supports a substantial likelihood that the 2019 Exclusivity Agreement is a fully valid and enforceable agreement.

The 2019 Exclusivity Agreement provides that Camphor will submit a purchase order for each order of the Product under that agreement (Doc. 42-1 at ¶1.2) (stating that "[i]n the event of a conflict between the terms of any Purchase Order and this Agreement, this Agreement shall control").  Notably, the purchase order at issue is dated November 2, 2020, after the 2019 Exclusivity Agreement effective date of February 26, 2019 (Doc. 42 at Pg. 11).  Under the plain language of the 2019 Exclusivity Agreement, the purchase order falls squarely within the 2019 Exclusivity Agreement.  Thus, to determine whether Camphor is in breach for failing to pay for the 153 kilograms of the Product, the Court must look at the parties' obligations under the 2019 Exclusivity Agreement.

On this record, it is clear that Camphor failed to pay pursuant to the agreed terms for the 153 kilograms of the Product, but Camphor argues that it is excused from its obligations under the 2019 Exclusivity Agreement because of Luxi's antecedent breach of the contract.  (Doc. 42 at 9 (citing *In re Thomas*, 51 B.R. 653,

656 (Bankr. M.D. Fla. 1985); *Direct Mail Holdings, LLC v. Bush*, Case No. 8:12-CV-145-T-30EAJ, 2012 WL 1344823, at *5-6 (M.D. Fla. Mar. 8, 2012))).  In turn, Luxi asserts that Camphor is unlawfully retaining dominion and control over property belonging to Luxi (Doc. 5 at ¶41) and points to Camphor's own March 2021 Demand Letter as evidence of Camphor's receipt of the Product and non-payment (Doc. 5-4).  Clearly, the March 2021 Demand Letter sent by Camphor's counsel and the affidavit of Luxi's counsel demonstrates that Camphor received the Product that it was contractually obligated to pay for and subsequently refused to pay for the Product (Doc. 5-3; Doc. 5-4).  Thus, it appears that Camphor may be in breach of contract and be liable for conversion and unjust enrichment, but such a determination must also consider the validity of Camphor's assertion of Luxi's antecedent breach of the 2019 Exclusivity Agreement.  However, as discussed more fully below, it is unclear on this record whether Camphor will prevail on its claim of an antecedent breach.  Regardless, the court need not decide the issue of the whether there is a substantial likelihood of success on the merits as to Luxi's claims of breach of contract (Count II), conversion (Count IV) and unjust enrichment (Count VI) because Luxi cannot demonstrate that it will suffer irreparable harm if an injunction does not issue as to each of those claims.

A party seeking a preliminary injunction must establish that it will suffer irreparable harm unless the injunction issues. *Siegel*, 234 F.3d at 1176.  "Significantly, even if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make

14

preliminary injunctive relief improper." *Id*.   Indeed, irreparable harm is "the sine

qua non of injunctive relief." *Id*. (citations and quotation marks omitted).   In the

context of a preliminary injunction, the asserted irreparable harm must be actual

and imminent rather than remote or speculative. *Id*.   Although economic losses

alone will not justify entry of a preliminary injunction, the loss of customers and

goodwill is an irreparable injury. *Id*. (*citing Ferrero v. Associated Materials Inc.*, 923

F.2d 1441, 1449 (11th Cir. 1991)).   "An injury is 'irreparable' only if it cannot be

undone through monetary remedies." *Cunningham v. Adams*, 808 F.2d 815, 821

(11th Cir. 1987).

Luxi argues that it will suffer irreparable harm if an injunction does not issue

as to the breach of contract (Count II), conversion (Count IV), and unjust

enrichment (Count VI) claims because "[e]very day that passes without payment

for the Shipment causes immediate and irreparable harm to [Luxi] and further

enriches the Defendant" (Doc. 5 at ¶32).   However, an unpaid purchase order can

most certainly be cured through a monetary remedy.   *See Medical & Chiropractic*

*Clinic, Inc. v. Oppenheim*, Case No. 8:16-cv-1477-T-36TBM, 2016 WL 6093223, at

*5 (M.D. Fla. Oct. 19, 2016) (quoting *Diamond Power Inter., Inc. v. Clyde Bergemann,*

*Inc.*, 370 F.Supp.2d 1339, 1349)) (stating that "[a] mere threatened monetary injury,

which can be addressed in damages, is insufficient to establish the irreparable injury

essential to the issuance of a preliminary injunction."); *Gulf Coast Produce, Inc. v.*

*American Growers, Inc.*, Case No. 07-80633-CIV, 2007 WL 2302109, at *2 (Aug. 8,

2007) (holding that a preliminary injunction was unwarranted when an adequate

15

remedy at law – monetary damages – was available to Plaintiff); *Long v. Murray*, Case No. 6:09-cv-1320-Orl-19DAB, 2009 WL 4806941, at *4 (M.D. Fla. Dec. 4, 2009) (stating that monetary damages for nonpayment of wages, breach of contract and breach of an implied contract are all legal in nature).  Here, Camphor is only holding one shipment of goods, the value of which is readily identifiable, both as to price and amount.  The 2019 Exclusivity Agreement actually includes pricing information that would assist in making an accurate damages calculation (Doc. 26-1).  Therefore, Luxi's claimed injury as to the breach of contract (Count II), conversion (Count IV), and unjust enrichment (Count VI) claims is not irreparable, and thus, Luxi's Motion as to those claims must fail.

### B.  Luxi's Tortious Interference with a Business Relationship Claim

In Count V, Luxi asserts a claim of tortious interference with a business relationship.  To prevail on a claim for tortious interference with a business relationship under Florida law, a party must prove: (1) the existence of a business relationship; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with that relationship by the defendant which induces or otherwise causes nonperformance; and (4) damages resulting from the tortious interference. *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994); *Border Collie Rescue, Inc. v. Ryan*, 418 F. Supp. 1330, 1343 (M.D. Fla. 2006). Here, Luxi states that it has a substantial likelihood of success as to this claim because Camphor has affirmatively shown its intent to seize any shipments of the Product into the United States that are intended for Luxi's other customers (Doc. 5

at ¶42).  Camphor stated that it would "contact the United States FDA and Border Protection and Customers to use all legal means available to seize any Polymyxin Sulfate, USP API that Shandong Luxi imports or an appointed U.S. agent imports into the United States to setoff [Camphor's] damages that exceed the value of the subject shipment now in possession [by Camphor]" (Doc. 5 at ¶42).

However, Luxi's only support for its position is the March 2021 Demand Letter sent by Camphor's counsel to Luxi on March 16, 2021 (Doc. 5-4).  In this correspondence, Camphor's counsel stated that Camphor received a shipment and intends to hold that shipment, without paying, "until such time as [Luxi] responds in writing within ten (10) days confirming that the Shipment rightfully belongs to Camphor as a setoff against Camphor's damages incurred to date **and** ceases and desist any and all activities with respect to its marketing and promoting sale of the Product to and/or through any vendors other than Camphor" (Doc. 5-4 at Pg. 3). The March 2021 Demand Letter specifically stated to Luxi that:

> [i]f you do not comply, my client has authorized me to institute legal action in the United States District Court for the Middle District of Florida as per the terms and conditions contained within Purchase Order 40385. In addition to seeking enforcement of the Agreement, Camphor will seek any and all available monetary remedies, including attorneys' fees, as well as permanent injunctive relief against Shandong Luxi in all jurisdictions in which your company sells the Product or otherwise conducts business in violation of the Agreement.
>
> Additionally, my client has instructed me to contact the United States FDA and Border Protection and Customs to use all *legal means available* to seize any Polymyxin Sulfate, USP API that Shandong Luxi imports or an appointed U.S. agent imports into the U.S. to setoff my client damages that exceed the value of the subject Shipment now in possession.

17

(Doc. 5-4 at Pg. 3) (emphasis added).  Notably, Camphor's counsel clearly stated that Camphor intended to use all legal means to seize any of the Product that Luxi imported into the U.S. as a setoff against Camphor's damages (Doc. 5-4 at Pg. 3).

On this record, Luxi has failed to demonstrate what, if any, actions taken by Camphor in a follow up to the March 2021 Demand Letter may have tortiously interfered with Luxi's business relationships.  Camphor clearly stated in the March 2021 Demand Letter that it intended to pursue all "*legal means available*," whatever they may be.  As written, the March 2021 Demand Letter cannot be construed as a threat to illegally tortiously interfere with Luxi.  Thus, the letter alone is likely insufficient to assert a claim of tortious interference.  More significantly, Luxi has failed to present any evidence of record that would establish that Camphor actually attempted to, or actually did tortiously interfere with Luxi's business relationships. Without such evidence, Luxi cannot establish a substantial likelihood of success on the merits as to the claim of tortious interference with a business relationship in Count V.  As such, Luxi's Motion must also fail as to that claim.

In summary, Luxi's Motion is due to be denied because as to the breach of contract (Count II), conversion (Count IV), and unjust enrichment (Count VI) claims, Luxi cannot establish an irreparable injury, and as to the tortious interference claim (Count V), Luxi cannot establish a likelihood of success.

### C.    Camphor's Claims for Breach of the 2019 Exclusivity Agreement

Camphor seeks injunctive relief based on Luxi's purported breaches of the 2019 Exclusivity Agreement, which Camphor contends is a fully executed,

enforceable agreement (Doc. 25 at Pg. 8).  Specifically, Camphor seeks injunctive

relief for:

> A: Prohibiting Luxi from selling the Product to any entity other
> than Camphor and Camphor's affiliates;
>
> B. Prohibiting Luxi from disclosing confidential, proprietary
> information belonging to Camphor;
>
> C. Requiring that Luxi honor its obligations under the 2019
> Agreement pending the resolution of the arbitration in this action;
> and
>
> For any further relief this Court deems just and proper.

(Doc. 25 at 13).  Camphor asserts that pursuant to section 12 of the 2019 Exclusivity

Agreement, which states, in part, that any dispute arising out of the 2019 Exclusivity

Agreement, except for an injunction, shall be submitted to be resolved through

arbitration[6] (Doc. 26 at ¶22; Doc. 25-1 at ¶12).  Section 12 further provides that if a

party discloses confidential information, the other party may seek injunctive relief

and that monetary damages are inadequate to compensate the disclosing party for

breach (Doc. 25-1 at ¶12).  Camphor contends that Luxi breached the 2019

Exclusivity Agreement's exclusivity and confidentiality provisions (Doc. 25 at Pg.

10).  While the undersigned does find that Camphor has demonstrated a substantial

likelihood of success in proving that the 2019 Exclusivity Agreement is the operative

and enforceable agreement, the record is not as certain as to whether Camphor has

presented sufficient evidence to demonstrate a substantial likelihood of success in

prevailing on its claims for breach of the exclusivity provision and breach of the

---

[6] Currently pending before the Court is Camphor's Motion to Compel Arbitration (Doc. 17).

confidentiality provision.   Notwithstanding Camphor's ability to demonstrate a likelihood of success on the alleged breaches of the 2019 Exclusivity Agreement, Camphor's inability to establish irreparable harm proves fatal to Camphor's attempt to obtain injunctive relief.

Camphor's two theories of breach of the 2019 Exclusivity Agreement are that Luxi breached the exclusivity provision and the confidentiality provision (Doc. 25 at Pg. 10).   Section 1.4 of the 2019 Exclusivity Agreement, titled "Exclusive Arrangement," states that "Luxi covenants and agrees not to sell the Product, directly or indirectly to any person or entity other than Camphor…" (Doc. 25 at ¶12; Doc. 25-1 at ¶1.4).   According to the Creaturo Affidavit, Luxi approached Camphor's largest clients in Europe and the United States in violation of the exclusivity commitment (Doc. 18 at ¶28).   Creaturo claims that this may alter the price structure of the Product in the market and ultimately diminish Camphor's overall profitability and market share (Doc. 25 at ¶17).   Moreover, Creaturo states in his affidavit that Luxi appointed a competitor of Camphor as its authorized FDA agent for the importation of the Product (Doc. 18 at ¶28).   Lastly, Creaturo states in his affidavit that as a result of Luxi's breach, Camphor has lost one of its largest clients due to their inability to fulfill its own supply obligations to that client (Doc. 25 at ¶18; Doc. 18 at ¶ 29).

Additionally, Camphor provides e-mail correspondence between Gary Hetu ("Hetu"), a purchasing manager at Sheffield Pharmaceuticals ("Sheffield"), and Creaturo, where Hetu informs Creaturo that two different United States' ("U.S")

based vendors were offering the Product, despite the fact that Camphor is supposed

to be the sole authorized importer of the material into the U.S. (Doc. 44-1).  Hetu

inquires in the e-mail as to how it is possible that other U.S. based vendors are able

to offer the Product if Camphor is the exclusive agent, and further states the

following:

> "This is a critical material for Sheffield and any disruption
> in supply is unacceptable.  We are going through significant
> expense to test this material for approval to use in
> formulation.  Should you be unable to supply this material
> our expectation will be that you compensate us for the
> expense associated with the testing." (Doc. 44-1).

While this evidence is persuasive, Camphor does not provide any additional

evidence to demonstrate that Luxi in fact did sell, directly or indirectly, the Product

to any other persons or entities in contradiction to the 2019 Exclusivity Agreement.

Regardless of whether Camphor could demonstrate a likelihood of success that Luxi

violated the exclusivity provision, as discussed further below, Camphor has failed

to demonstrate that it will suffer irreparable harm if an injunction does not issue,

especially in light of the fact that Camphor waited to seek relief until nearly two

years after it claims it first learned of an alleged breach of the exclusivity provision.

It is also unclear as to whether Camphor can demonstrate a substantial

likelihood of success in prevailing on its claim for breach of the confidentiality

provision of the 2019 Exclusivity Agreement.  Camphor asserts through the

Creaturo Affidavit that Luxi's filing of the 2016 Exclusivity Agreement into the

Court record (*See* Doc. 37-1) is a breach of that Agreement's confidentiality

provision and places into the public domain confidential information that Luxi

specifically agreed not to disclose (Doc. 18 at ¶31). Moreover, according to the Creaturo Affidavit Luxi violated the confidentiality provision by approaching Camphor's customers in Europe and the United States (Doc. 18 at ¶31). Without more, this evidence appears insufficient to demonstrate a likelihood of success of the alleged breach of the confidentiality provision.

First, the undersigned is not persuaded by Camphor's argument that Luxi's filing of the 2016 Exclusivity Agreement is a breach of the confidentiality provision. During the June 2, 2021 hearing, Camphor took the position that Luxi breached the confidentiality provision by filing in the public record the 2016 Exclusivity Agreement and other agreements, which contain confidential pricing information. However, contrary to this argument, Camphor filed the Creaturo Affidavit which explicitly states the pricing information contained in the 2019 Exclusivity Agreement (Doc. 18). Notably, this pricing information in the 2019 Exclusivity Agreement is clearly more recent than the information contained in the 2016 Exclusivity Agreement. Therefore, Camphor's filing of the 2019 pricing information casts doubt as to whether Luxi's filing of the 2016 pricing information was contrary to the confidentiality provision. Additionally, the record lacks compelling any evidence that Luxi disclosed any confidential information to third parties. Although Camphor claims that Luxi violated the confidentiality provision by approaching Camphor's customers in Europe and the United States (Doc. 18 at ¶31), Camphor provided no other evidence to support this claim. Therefore, the

undersigned concludes that Camphor has not demonstrated that it has a substantial likelihood of success as to its claim for breach of the confidentiality provision.

Regardless of Camphor's ability to establish a likelihood of success as to the alleged breaches of the exclusivity and confidentiality provisions of the 2019 Exclusivity Agreement, Camphor cannot demonstrate irreparable harm.  As stated above, irreparable harm is "the sine qua non of injunctive relief." *Siegel*, 234 F.3d at 1176 (11th Cir. 2000) (citations and quotation marks omitted).  Simply stated, Camphor's request is barred by its delay in seeking injunctive relief.  Even though an agreement's terms regarding injunctive relief are not key towards analyzing whether a plaintiff established irreparable harm, delay in seeking injunctive relief *is*. *See Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) (finding that a plaintiff's "delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militate[d] against a finding of irreparable harm," as injunctive relief "requires showing 'imminent' irreparable harm"); *see also Wreal, LLC*, 840 F.3d at 1248; *Tech Traders, LLC v. Insuladd Envtl., Ltd.*, No. 6:18-CV-754-ORL-40GJK, 2018 WL 5830568, at *4 (M.D. Fla. Nov. 7, 2018) (a plaintiff's "failure to act with 'speed and urgency' is enough, by itself, to undermine a motion for a preliminary injunction"); *Menudo Int'l, LLC v. In Miami Prod., LLC*, No. 17-21559-CIV, 2017 WL 4919222, at *6 (S.D. Fla. Oct. 31, 2017) (holding that "[p]laintiff's delay is by itself sufficient grounds to deny its request for an injunction").

Here, Camphor alleges that Luxi first breached the 2019 Exclusivity Agreement in or around the March 2019 timeframe (*See* Doc. 25 at Pg. 5), yet Camphor waited until more than two years after the fact to seek injunctive relief.  If the exclusivity arrangement was as vital to the protection of Camphor's business as they contend it is, then any breach by Luxi would immediately necessitate the need to seek injunctive enforcement.  According to the September 2019 Demand Letter from Camphor to Luxi, Camphor was aware that, as of at least that date, Luxi was "selling and marketing the Product to other purchasers within China" (Doc. 43-1 at Pg. 1).   Camphor further stated in the September 2019 Demand Letter that "Camphor has learned that [Luxi] is using [Camphor's] intellectual property and confidential trade secrets for its own commercial gain without prior authorization (Doc. 43-1 at Pg. 2).   Camphor then repeated its demands and re-iterated its knowledge of Luxi's purported misconduct in the October 2019 Demand Letter sent by Camphor to Luxi (Doc. 43-2 at Pgs. 1-2).  Despite continued notice, Camphor failed to enforce the issue until after they were first sued by Luxi on April 21, 2021 and provides no acceptable justification for such delay.

Equally fatal to Camphor's Motion is Camphor's own failure to perform its contractual obligations under the 2019 Exclusivity Agreement, which such failure should preclude any entitlement to injunctive relief.  *See Bradley v. Health Coal., Inc.*, 687 So. 2d 329, 333 (Fla. 3d DCA 1997) ("A party is not entitled to enjoin the breach of a contract by another, unless he himself has performed what the contract requires of him so far as possible; if he himself is in default or has given cause for

nonperformance by defendant, he has no standing in equity") (quoting *Seaboard Oil Co. v. Donovan*, 128 So. 821, 824 (Fla. 1930)).  As noted above, Luxi's breach of contract (Count II), conversion (Count IV), and unjust enrichment (Count VI) claims are focused upon Luxi's delivery of 153 kilograms of the Product to Camphor and Camphor's refusal to return the product or pay for the Product (Doc. 37 at ¶70). Camphor asserts that it is excused from paying for the Product based upon Luxi's antecedent breach.  However, Camphor's position appears misguided.

It is true that a material breach of an agreement allows the non-breaching party to treat the breach as a discharge of its contract liability.  *Bradley*, 687 So. 2d at 333.  However, as recognized by the Eleventh circuit, under the *election doctrine*:

> [a] material breach does not automatically and *ipso facto* end a contract. It merely gives the injured party the right to end the agreement; the injured party can choose between canceling the contract and continuing it. If he decides to close the contract and so conducts himself, both parties are relieved of their further obligations and the injured party is entitled to damages to the end of the contract term (to put him in the position he would have occupied if the contract had been completed). If he elects instead to continue the contract, the obligations of both parties remain in force and the injured party may retain only a claim for damages for partial breach.

*Dunkin' Donuts of Am., Inc. v. Minerva, Inc.*, 956 F.2d 1566, 1571 (11th Cir. 1992) (quoting *Cities Service Helex, Inc. v. United States*, 543 F.2d 1306, 1313, 211 Ct.Cl. 222 (1976) (footnote and citations omitted).  "Under strict formulations of the election doctrine, any act indicating an intent to continue the contract is an election, and election to continue may occur simply by failure of the injured party to take action to end the agreement within a reasonable time after becoming aware of the facts."

*Cities Serv. Helex, Inc*, 543 F.2d at 1313–14.  The strict view of the election doctrine recognizes that "if performance continues and is accepted, the right to end the contract cannot be preserved even by explicit expression of intent; any inconsistent act results in the loss of the right, unless the other party assents to its retention by the aggrieved party." *Id.*[7]

Here, based upon the current record, when Camphor asserted in the September 2019 Demand Letter that Luxi was selling the Product to other customers contrary to the exclusivity provision in the 2019 Exclusivity Agreement, Camphor could have asserted a material breach and claimed to have been relieved from any of its contractual obligations to order further amounts of the Product from Luxi.  In other words, Camphor could have treated the contract as discharged, ceased its business relationship with Luxi, and sought relief before this Court.  However, Camphor chose to continue to seek a shipment of the Product under the 2019 Exclusivity Agreement from Luxi, and then refused to remit payment after taking possession of the Product.  Under these circumstances, Camphor's claim that it is relieved from payment of the 153 kilograms of the Product based upon Luxi's antecedent breach is clouded, and the evidence in this regard is clearly insufficient to warrant injunctive relief.  Ultimately, the record is unclear whether either party

---

[7]  An exception to the strict view of the election doctrine has been recognized by some courts, commentators, and the Uniform Commercial Code.  *See Northern Helex Co. v. United States*, 455 F.2d 546, 197 Ct.Cl. 118 (1972) (holding that under specific circumstances an injured party may itself continue performance in certain circumstances and yet reserve its right to claim material breach without the breaching party's assent).  Here, the exception seems inapplicable, given that Camphor has refused payment for the 153 kilograms of the Product.

has standing in equity given the alleged competing breaches and the insufficiency of the evidence of record at this time to establish the alleged breaches.   *See Bradley,* 687 So.2d at 333 (stating "a party is not entitled to enjoin the breach of a contract by another unless he himself has performed what the contract requires under him so far as possible; if he himself is in default or has given cause for nonperformance by defendant, he has no standing in equity").

## IV.      Conclusion

A preliminary injunction is an extraordinary remedy to be used only when a movant carries its burden as to the four prerequisites. *See Four Seasons*, 320 F.3d at 1210.  Here, neither Luxi nor Camphor have carried that burden.[8]  Accordingly, it is hereby

RECOMMENDED:

1.  Luxi's Motion (Doc. 5) and Camphor's Motion (Doc. 25) be denied.

IT IS SO REPORTED in Tampa, Florida, this 24th day of June, 2021.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

---

[8]   Given that the Court is satisfied that the parties are unable to establish either a substantial likelihood of success and/or irreparable harm, the Court has not examined whether the threatened harm to the moving party outweighs the potential harm the proposed injunction may cause the opposing party or whether the injunction would be adverse to the public interest because such analysis would not alter the disposition of Luxi's Motion or Camphor's Motion.

## **NOTICE TO PARTIES**

A party has fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections.  28 U.S.C. § 636(b)(1)(C).  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  See 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).  **Should the parties wish to expedite the resolution of this matter, they may promptly file a joint notice of no objection.**

cc:     Hon. Charlene E. Honeywell
        Counsel of Record