**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

SHANDONG LUXI
PHARMACEUTICAL CO., LTD.,

    Plaintiff,

v.                                      Case No: 8:21-cv-942-CEH-AEP

CAMPHOR TECHNOLOGIES, INC.,

    Defendant.
_____/

## ORDER

This matter comes before the Court on Defendant's Motion to Compel Arbitration (Doc. 17). In the motion, Defendant Camphor Technologies, Inc. requests an order compelling the parties to arbitrate their disputes pursuant to the arbitration provision contained in the parties' Exclusive Agency and Supply Agreements. Plaintiff filed a response in opposition (Doc. 30) and Defendant replied (Doc. 51). The Court, having considered the motion, responses, and being fully advised on the premises, will deny Defendant's Motion to Compel Arbitration.

## BACKGROUND

### A.    Factual Background

Plaintiff Shandong Luxi Pharmaceutical Co., Ltd., ("Plaintiff") is a manufacturer and developer of chemical compounds, and Defendant Camphor Technologies, Inc. ("Defendant") is in the business of process development and commercial production of consumer pharmaceutical products. Doc. 37 ¶¶ 3–4. Since

2014, Plaintiff and Defendant have maintained a commercial business relationship with Defendant purchasing pharmaceutical products from Plaintiff. *Id.* ¶ 5. According to Plaintiff, the parties operated under agreements for sale and purchase from 2014–2019, but their 2016 contract terminated at the end of 2019. *Id.* ¶¶ 6–8. Plaintiff claims that on January 28, 2020, the parties met and negotiated the resumption of their business relationship; but rather than being bound by a formal agreement, the parties agreed to be governed by each individual purchase order containing the terms and conditions of the sale. *Id.* ¶ 39. By contrast, Defendant claims the parties' commercial relationship has always been governed by a fully executed Exclusive Agency and Supply Agreement contract, with the most recent agreement executed in 2019 and effective through February 25, 2024. Doc. 17 ¶ 2.

Plaintiff filed its Amended Complaint on May 21, 2021, which details the underlying dispute whereby Plaintiff claims it fulfilled a Purchase Order submitted by Defendant, and Defendant took possession of the product but has refused to remit payment. Doc. 37 ¶¶ 45–52. Plaintiff further alleges that Defendant has threatened to employ assistance from United States agencies such as the Food and Drug Administration ("FDA") and Customs and Border Protection ("CBP") to seize future shipments that Plaintiff lawfully imports into the United States intended for its other business partners. *Id.* ¶¶ 54–55. Plaintiff seeks injunctive relief enjoining Defendant or its agents from: (1) interfering with any future shipments of Plaintiff's products lawfully imported and intended for other customers, and (2) transferring, encumbering, converting, or otherwise disposing of any of Plaintiff's goods that are

already in Defendant's possession but have not been paid for. *Id.* ¶¶ 59. Plaintiff seeks additional relief under claims for breach of contract, conversion, tortious interference with a business relationship, unjust enrichment, and replevin. *Id.* ¶¶ 68, 75, 83, 90, 95, 101. The Court has jurisdiction pursuant to diversity of citizenship. *Id.* ¶ 13.

On April 30, 2021, Defendant filed a Motion to Compel Arbitration, declaring that Plaintiff's claims are subject to the parties' long-standing agreement to arbitrate all disputes, which would still be applicable per the 2019 Agreement that Defendant asserts is in full effect. Doc. 17 ¶¶ 2–3. In support of its motion, Defendant filed the affidavit of its president, Michael Creaturo. Doc. 18.

In its motion to compel, Defendant contends the substantially same provision to arbitrate was included in each of the parties' agreements executed in 2014, 2016, and 2019. Doc. 17 ¶ 2. The agreement to arbitrate excludes a party's claim for immediate injunctive relief and other provisional remedies that arise under the parties' agreements. *Id.* ¶ 3. However, Defendant argues that Plaintiff's attempt to seek an injunction in this case concerns matters which Plaintiff concedes are outside the purview of the parties' agreement. *Id.* ¶ 3. Thus, Defendant contends that each of Plaintiff's claims, including the request for injunction, is subject to arbitration. *Id.*

Plaintiff filed the affidavit of its counsel, Katherine Burghardt Kramer, in opposition. Doc. 30-1. In response to the motion to compel, Plaintiff argues that even if one of the contracts governs their relationship, the arbitration provision is unenforceable because the arbitration forum and procedural rules specified in the provision are unavailable. Doc. 30 at 1–2. Plaintiff contends that the forum and

procedural rule selections were integral to the parties' agreements to arbitrate; and where such is the case, an arbitration clause is null if the designated forum does not exist at the time an arbitrable dispute arises. *Id.* Arguing in the alternative, Plaintiff alleges Defendant has waived any right to seek redress through arbitration because its conduct has been inconsistent with its position that the claims here are subject to arbitration. *Id.*

Defendant denies that the forum or procedural rules are integral to the parties' agreement and claims the Court may appoint a substitute arbitral forum where the forum is unavailable. Doc. 51 at 2-3. In addition, Defendant contends that the 2019 Contract contained a severability clause, which allows a court to sever any invalid clause of the agreement and, in this instance, compel arbitration according to the remaining, valid terms of the parties' agreement. *Id.*

**B.      Arbitration Agreement**

Defendant argues that the arbitration provision included in the 2014, 2016, and 2019 agreements are in substantially the same form, and it provides copies of the 2014 and 2019 arbitration provisions. Doc. 17 at 12–13; Doc. 17-1; Doc. 17-2. Plaintiff admits to the execution of the 2104 and 2016 Agreements, including the arbitration clauses, but claims the 2016 Agreement expired at the end of 2019. Doc. 37 ¶ 8. Plaintiff provides a copy of the 2016 Agreement, which includes the following arbitration provision:

> 12. Governing Law and Venue: This Agreement shall be governed by and construed in accordance with the laws of the State of Florida U.S. District Court Middle District Florida without giving effect to the

conflicts of law principles thereof. Any dispute arising out of this Agreement that is not amicably settled, except for seeking injunctive relief as provided below, shall be submitted to be resolved through final and binding arbitration by the Arbitration Institute of the United States Chamber of Commerce in accordance with its Arbitration Rules (the "Rules"). Any such arbitration will take place in Sarasota, Florida, USA. The number of arbitrators shall be one, and the arbitrator shall be selected by agreement of the Parties or, failing such agreement, shall be selected according to the relevant Rules. The Party against whom an award is passed shall bear the costs of such arbitrator. If either Party seeks judicial enforcement or review of such award, judgment may be entered upon such award in any court of competent jurisdiction.

The Arbitration clause shall not prevent either Party from bringing any claimed breach hereof before the ordinary courts for the purpose of applying for provisional remedies. Luxi submits to the jurisdiction of the courts of the State of Florida and the federal district court of the District of Florida for purposes of enforcement and interpretation of this agreement.

The Parties each expressly agree that due to the unique nature of disclosing Party's confidential information, monetary damages would be inadequate to compensate the disclosing party for any breach by the receiving party of its covenants and agreements set forth in this Agreement. Accordingly, if a Party breaches or threatens to breach its obligations hereunder, such Party agrees that the other Party may immediately seek an injunction ex-parte, that such Party waives notice thereof, that said violation constitutes immediate irreparable harm for which no adequate remedy at law exists and to waive any requirement in such case for the securing or posting of any bond in connection with such remedy. Each Party agrees to pay the other Party's costs and expenses (including court and/or arbitration costs and reasonable attorneys' fees) incurred in successfully enforcing or defending any of its rights hereunder against the other Party.

Doc. 37-1 at 11–12.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., codifies a "liberal federal policy favoring arbitration" and requires the courts to "rigorously enforce

agreements to arbitrate." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625–26 (1985) (internal quotation marks omitted). The "principal purpose" of the FAA is to ensure "that private arbitration agreements are enforced according to their terms." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).

The Court must first determine whether "the making of the agreement for arbitration or the failure to comply therewith is . . . in issue." 9 U.S.C. § 4. If, under a "summary judgment-like standard," the district court concludes that there "is no genuine dispute as to any material fact concerning the formation of such an agreement," it "may conclude as a matter of law that [the] parties did or did not enter into an arbitration agreement." *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1346 (11th Cir. 2017) (quoting *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016) (citation and quotation marks omitted)). When a genuine dispute exists, "the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4.

## DISCUSSION

Defendant moves this Court for an order compelling the parties to arbitrate their disputes pursuant to the arbitration provision contained in the 2014, 2016, and 2019 Agreements. Plaintiff contends the 2019 agreement is no longer in effect, but even if it was, Plaintiff argues the arbitration provision is unenforceable because the arbitral forum, which was integral to the parties' agreement, no longer exists. The Eleventh Circuit recognizes a "two-step process required in considering the arbitrability of any contract containing an arbitration clause: 1) resolution of any formation challenge to

the contract containing the arbitration clause, . . .; and 2) determination of whether any subsequent challenges are to the entire agreement, or to the arbitration clause specifically . . . ." *Solymar Invs., Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 990 (11th Cir. 2012).

A.  **Formation Challenge to the 2019 Agreement**

The parties agree they entered into the 2014 and 2016 Agreements, both of which contain the arbitration language at issue. Plaintiff disputes, however, the validity of the 2019 Agreement. Rather, Plaintiff contends the 2016 Agreement ended in 2019, and the parties thereafter proceeded under various Purchase Orders, which did not contain an arbitration clause. Defendant argues the 2019 Agreement is a valid and enforceable contract.

The Court must necessarily address as a threshold matter the formation of the 2019 Agreement containing the arbitration clause. *See Solymar Invs., Ltd.*, 672 at 990. State law governs the formation of a contract. *Id.* at 991 (citing *First Options of Chicago v. Kaplan*, 514 U.S. 938, 944 (1995)). It is undisputed that Florida law applies to the claims here. Under Florida law, a valid contract requires an "offer, [an] acceptance, consideration," *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004), and mutual assent as to sufficiently definite essential terms, *Gibson v. Courtois*, 539 So. 2d 459, 460 (Fla. 1989). In its motion to compel arbitration, Defendant argues that the specific terms of the 2019 Agreement were agreed to by the parties at a meeting in Shanghai, China on January 14, 2019, and the 2019 Agreement was fully executed on March 5, 2019. Doc. 17 at 8; *see also* Doc. 18 (affidavit of Camphor's president Michael

7

Creaturo). The effective dates of the 2019 Agreement were from February 26, 2019 through February 25, 2024. Doc. 18 ¶ 14. Additionally, the fully executed 2019 Agreement was delivered to Luxi by UPS courier on March 23, 2019. *Id.* ¶ 15; Doc. 18-1.

Plaintiff's response in opposition to the motion to compel does not proffer any evidence that the 2019 Agreement is invalid. In summary fashion, Plaintiff contends the parties disagree as to which contracts govern their relationship. Doc. 30 at 1. Plaintiff does not offer any proof to rebut the formation of the 2019 Agreement. Defendant, on the other hand, has provided a fully signed copy of the 2019 Agreement and declaration of its president as to the offer, acceptance, consideration, and discussion of essential terms of the 2019 Agreement. The Court applies a "summary judgment-like standard" to determine if there "is no genuine dispute as to any material fact concerning the formation of such an agreement." *Burch*, 861 F.3d at 1346. Applying this standard, the Court concludes, for purposes of this motion, that the 2019 Agreement was valid and in effect. Plaintiff offers no evidence to create an issue of disputed fact as to the formation of the 2019 Agreement.[1] As Plaintiff concedes, the arbitration provision contained in the 2019 Agreement is identical to the provisions in the prior agreements in any event. The Court now turns to the language of the

---

[1] The Court's finding regarding the formation and validity of the 2019 Agreement is based on the record before it on the instant motion. However, the Court notes that the Magistrate Judge found, in considering the motion for preliminary injunction, that the Plaintiff similarly failed to provide any evidence to support its allegations that it did not timely receive a fully executed version of the 2019 Agreement or that the parties agreed to continue their relationship without the rubric of the prior exclusivity agreements. *See* Doc. 52 at 12.

arbitration provision, which mandates that arbitration be conducted by the Arbitration Institute of the United States Chamber of Commerce in accordance with its Arbitration Rules.

**B.      Unavailability of Arbitral Forum**

The parties agree that the arbitration forum designated in the agreements does not exist or is otherwise unavailable. Under § 5 of the Federal Arbitration Act, when the arbitral forum chosen by the parties is unavailable, the court can appoint a substitute arbitrator. *See* 9 U.S.C. § 5; *Brown v. ITT Consumer Financial Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000). Because arbitration is a matter of contract, however, the Eleventh Circuit has held that where a forum is unavailable, an arbitration agreement is only enforceable if the choice of forum is not an integral part of the parties' agreement to arbitrate. *See Inetianbor v. CashCall, Inc.*, 768 F.3d 1346, 1350 (11th Cir. 2014). The unavailability of the parties' chosen forum precludes arbitration if "the choice of forum is an integral part of the agreement to arbitrate, rather than an ancillary logistical concern." *Id*. "To determine whether the forum selection clause is integral, we must consider how important the term was to one or both of the parties at the time they entered into the agreement." *Id*. at 1350.

Plaintiff provides the following excerpt from the 2016 Contract:

> Any dispute arising out of the Agreement that is not amicably settled, except for seeking injunctive relief as provided below, *shall* be submitted to be resolved through final and binding arbitration by the *Arbitration Institute of the United States Chamber of Commerce in Accordance with its Arbitration Rules (the 'Rules')*.

Doc 30 at 9 (citing Doc. 1–2 at 10) (emphasis added). Identical language appears in the 2014 and 2019 agreements.

According to Plaintiff, the arbitration provision within the 2016 Contract (and repeated in the 2019 document) chooses an arbitral forum and set of procedural rules, but the chosen forum and rules do not exist. Plaintiff claims Defendant acknowledged such prior to compelling arbitration through this Court. *Id.* at 2–3. Plaintiff provides an affidavit from Katherine Burghardt Kramer, counsel for Plaintiff, in which she relays an exchange between herself and defense counsel on April 30, 2021. Kramer expressed her concern that the arbitration clause could not be enforced because the specified forum and procedural rules did not exist. 30-1 ¶ 3. On May 11, 2021, defense counsel responded that "[t]he Issue of whether the entity exists is not relevant to the ultimate conclusion." *Id.* ¶ 4.

According to Kramer, an extensive internet search did not generate any results regarding the specified forum. *Id.* ¶ 5. Finally, Kramer states Plaintiff received a letter from defense counsel dated March 16, 2021, wherein he declares that any action by Defendant against Plaintiff would be brought in this Court *Id.* ¶ 6. According to Kramer, this letter led her to assume his position was a result of the unavailability of the designated arbitration forum and rules of procedure. *Id.*

Plaintiff goes on to argue that the arbitration forum and procedural rules in this case are integral to the arbitration clause, emphasizing the plain meaning of the clause, which provides that "[a]ny dispute arising out of this Agreement . . . *shall* be submitted to be resolved through final and binding arbitration by the [specified arbitral forum

10

and procedural rules.]" Doc. 30 at 9 (emphasis added). Plaintiff also points out that the sentence providing for the designations is the sole sentence in which the parties agree to arbitrate. *Id.* Next, Plaintiff underscores that both the forum and the procedural rules were expressly designated (rather than merely one or the other), and the contract did not contemplate an alternate for either. *Id.*

Plaintiff relies on *Flagg v. First Premier Bank*, 644 F. App'x 893, 896 (11th Cir. 2016) (finding a choice of forum integral to the parties' agreement to arbitrate because it was mentioned throughout the agreement and because it was designated exclusively to govern all claims, along with its Code of Procedure). *Id.* at 9–10. Plaintiff also relies on *Inetianbor*, 768 F.3d at 1350 (explaining that while the presumption in favor of arbitration is recognized, federal policy cannot be elevated above the intent of the parties). *Id.* at 10–11. Consequently, Plaintiff contends the arbitration provision is unenforceable and has no binding effect on the current dispute. *Id.* at 11.

Defendant disagrees that the specified forum and rules were integral to the parties' agreement to arbitrate, reasoning that the Agreements only once reference the chosen forum and twice reference the forum's rules. Doc. 51 at 2–3. Defendant relies on *Brown*, 211 F.3d at 1222 (deciding an arbitral forum was not integral to an agreement to arbitrate because it provided only for claims to be resolved under a specified code of procedures but did not specify a forum). *Id.* Defendant urges the Court to choose a substitute forum, citing *De Pombo v. Irinox North America, Inc.*, No. 20-cv-20533-BLOOM/Louis, 2020 WL 6290153 * 4 (S.D. Fla. Oct. 27, 2020) (explaining that where a chosen arbitral forum fails, unless it was integral to the

11

agreement to arbitrate, arbitration should still be ordered with a substitute forum). *Id. a*t 3–4.

In determining whether the forum and rule selection were integral to the parties' agreement to arbitrate, the Court first considers the text of the provision to determine the parties' intent. The provision plainly states that disputes arising out of the agreement which cannot be amicably settled "shall" be submitted to be resolved through final and binding arbitration "by the Arbitration Institute of the United States Chamber of Commerce in accordance with the Rules." Use of the mandatory word "shall" in the agreement supports a finding of intent to require arbitration with this particular arbitral forum and under its procedural rules. The language of the provision does not indicate that the choice of arbitral forum or procedural rules was otherwise optional.

Defendant contends the subsequent sentence which states "arbitration shall be conducted in Sarasota, Florida by one arbitrator to be chosen by the parties" provides support for an alternative arbitral forum if the specified forum were to be unavailable. The Court is not persuaded. The sentence reads "*any such* arbitration shall be conducted in Sarasota . . . ." Doc. 17-1 at 9 (emphasis added). A plain reading of the sentence indicates that "any such arbitration" refers the reader to the previous sentence, which specifies the arbitration will be conducted by the Arbitration Institute of the United States Chamber of Commerce in accordance with its Rules. Thus, contrary to Defendant's suggestion, this sentence seems to clarify logistical details of

12

the arbitration, such as the number of arbitrators to conduct the proceeding and how the arbitrator from that forum will be chosen.

Defendant compares this case to *Brown*, where the court found the arbitral forum was not integral to the parties' agreement. Doc. 51 at 3. Defendant cites to the fact that the 2019 Agreement only references the chosen forum one time and the rules promulgated by the body twice. *Id.* As was the case in *Flagg* and *Intetianbor*, the facts here are distinguishable from *Brown*, most obviously because in *Brown*, the arbitration provision only provided the claims to be resolved under a specified code of procedure and did not designate a specific forum. *Brown*, 211 F.3d at 1222. *See also Flagg*, 644 F. App'x at 896; *Inetianbor*, 768 F.3d at 1351. Beyond that, although it is true that neither the forum nor the procedural rules were mentioned multiple times throughout the agreement (as was the case in *Intetianbor*), the parties here continued to designate the same forum and procedural rules in their agreements in 2014, 2016, and 2019. The repeated choice of forum in all three agreements supports the conclusion that the designation of that forum and its rules was integral to the agreements. Therefore, it would not be appropriate for this Court to step in and appoint a different arbitral forum. Based on the plain reading of the arbitration provision, the use of mandatory language in the provision, and the reference to the same arbitral forum and its rules in all three agreements, the Court concludes the arbitral forum was integral to the

13

Agreements. As such, the Court will not compel the parties to arbitrate where the arbitral forum, which is integral to the parties' agreement, is unavailable.[2]

## C. Severability Clause

Finally, Defendant indicates that because the 2019 Contract contained a severability clause, the choice of forum should be considered an invalid term since the forum does not exist.[3] *Id.* at 3–4. The severability clause, Defendant argues, should allow the court to compel arbitration according to the remaining, valid terms of the arbitration agreement. *Id.* However, Defendant's argument fails because provisions are severed only "if the performance as to which the agreement is unenforceable is not an essential part of the agreed exchange." Restatement (Second) of Contracts §184(1). As the Court has found above, the arbitral forum in this case is essential to the parties' agreement to arbitrate; therefore, based on these facts, the Court cannot disregard the limiting provision which specifies the forum and its rules without undermining the parties' express intent to arbitrate subject to those limitations.

Because the Court finds the chosen forum and procedural rules were integral to the parties' agreement to arbitrate, the Court is unable to designate a substitute arbitral forum, and Defendant's motion to compel arbitration is due to be denied. Accordingly, it is

**ORDERED**:

---

[2] Because the Court concludes that the arbitral forum is integral and the motion to compel is due to be denied, the Court need not address Plaintiff's alternative argument that the Defendant waived its right to compel arbitration by its conduct.

[3] The record is devoid of information regarding whether or when that forum existed.

1. Defendant's Motion to Compel Arbitration (Doc. 17) is **DENIED**.

2. The parties shall conduct a case management meeting and file a case management report, pursuant to M.D. Fla. Local Rule 3.02, on or before January 13, 2022.

**DONE AND ORDERED** in Tampa, Florida on December 23, 2021.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any